UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHELLY J. MINNICK,

        Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

        Defendant.

CASE NO. C17-93 BAT

**ORDER REVERSING THE COMMISSONER AND REMANDING FOR FURTHER PROCEEDINGS**

Shelly J. Minnick appeals the ALJ's decision finding her not disabled. She argues the ALJ misevaluated the medical evidence, her testimony and the lay testimony. As relief she requests the Court remand the case for further administrative proceedings. Dkt. 13 at 2, 19. For the reasons below the Court **REVERSES** the Commissioner's final decision and **REMANDS** the case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## DISCUSSION

**A.   Medical and Other Source Evidence**

Ms. Minnick contends the ALJ misevaluated the opinions of Sarah J. Durham, LMHC/MHP; Mayang Hale, M.A., MHP; Brenda Havellana, Ph.D.; Richard Peterson, Ph.D.; Thomas Clifford, Ph.D.; Sunil Kakar, Psy.D.;Rhonda Bahr, MSW; Williams Wilkinson, Ed.D.; and Heidi Shors, M.D. Dkt. 13 at 3-10.

### *1. Ms. Durham, Ms. Hale, and Dr. Havellana*

These sources rendered opinions between December 2009 and January 2011. The ALJ's treatment of the opinions is inconsistent. On the one hand, the ALJ rejected Ms. Durham's December 2009 opinion, and Ms. Hale's November 2010 opinion on the grounds they "are not acceptable medical sources, and their opinions predate the period at issue by more than 12 months." Tr. 26. On the other, the ALJ gave significant weight to Dr. Havellana's opinions, which also predate the period at issue, accepting the doctor's report that Ms. Minick is dishonest about her alcohol use; malingers; and can understand and follow simple instructions. Tr. 26.

As to Ms. Durham and Ms. Hale, the ALJ gave invalid reasons to reject their opinions. The opinions and evidence from other sources, such as mental health professionals, are important and must be evaluated by the ALJ. *See Garrison v. Colvin,* 759 F.3d 995, 1013–14 (9th Cir. 2014) (ALJ erred by failing to recognize "other source that can provide evidence about the severity of a claimant's impairments and how it affects the claimant's ability to work"). The ALJ therefore committed legal error by rejecting the opinions simply because Ms. Durham and Ms. Hale are not "acceptable medical sources," i.e., medical doctors. *See* 20 C.F.R. §§ 404.1513(a)(1) and (3).

The ALJ also erred by rejecting the opinions on the grounds they predate "the period at issue." Ms. Durham applied for Supplemental Security Income (SSI) in February 2012, alleging disability beginning March 31, 2010. Tr. 13. Under 20 C.F.R. §§ 416.330(a); 416.355, the earliest month an SSI applicant can receive benefits is the month following the month the SSI application is filed. But while the regulations set the earliest date an applicant can receive benefits, they "say nothing about when a claimant's disability actually begins." *Owen v. Colvin*, No.15-5933-KLS, 2016 WL 6080910 at *3 (W.WA Oct. 18, 2016). Here Ms. Minnick claimed

she became disabled in 2010. Ms. Durham gave an opinion 3 months before the claimed onset date and Ms. Hale gave an opinion after the onset date. The opinions are relevant evidence about Ms. Minick's functional limitations because the ALJ did not find Ms. Minnick's functioning improved between the time the opinions were given, and the time she became eligible to receive benefits. Hence Ms. Minnick could have become disabled in 2010 and remained disabled when she appeared before the ALJ. Additionally, the ALJ gave Dr. Havellana's pre-application opinions great weight, a determination illustrating how the opinions' dates, alone, are not a basis to discredit them.

Furthermore, virtually all disability claims substantially rely upon evidence predating the date the disability application is filed. This is because a claimant needs evidence of disability to apply for benefits, and that evidence necessarily involves records, statements, and opinions that predate the application. The ALJ may assess what weight the evidence is given and discount it in the appropriate case. For example, the ALJ may reject medical opinions due to improvements to the claimant's physical or mental condition between the time the opinion was rendered and the relevant time at issue. But the ALJ, here, neither weighed Ms. Durham's and Ms. Hale's opinions, with any particularity, nor determined Ms. Minnick's condition improved since the opinions were rendered. The ALJ accordingly erred in rejecting Ms. Durham's and Ms. Hale's opinions simply because they were rendered before the date she was entitled to first receive SSI benefits.

Turning to Dr. Havellana, Ms. Minnick argues the ALJ erred because the doctor's opinions "proves little about Minnick's functional abilities since February 2012." Dkt. 13 at 5. The Court may reverse only when the ALJ's decision is not supported by substantial evidence, or if the ALJ applied the wrong legal standard. *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir. 1985).

Ms. Minnick bears the burden of showing the ALJ harmfully erred. *See Molina v. Astrue*, 674 F.3d 1104, (9th Cir. 2012). She fails to meet this burden because her opening brief provides no explanation as to how or why the ALJ erred. She instead makes a conclusory statement without making any attempt to show the ALJ committed a harmful error of fact or law. Additionally, Ms. Minnick's argument contradicts her claim the ALJ erred in rejecting the opinions Ms. Durham and Ms. Hale. Ms. Durham and Ms. Hale gave opinions in 2009 and 2010. Ms. Minnick argues their opinions support her claim, an argument premised on the continuing viability of their opinions. The Court rejects the notion that Ms. Durham's and Ms. Hale's opinions have continuing viability but Dr. Havellana's does not. The Court accordingly affirms the ALJ's assessment of Dr. Havellana's opinions.

### *2.    Dr. Peterson*

The ALJ rejected Dr. Peterson's opinion that Ms. Minnick has moderate mental restrictions and marked limitations in her ability to be aware of hazards and to take precautions. Tr. 26. The ALJ rejected Dr. Peterson's opinions for several reasons, at least one of which is valid. The ALJ found the doctor's opinion is contrary to Ms. Minnick's treatment records which "regularly revealed normal mental status during appointments." Tr. 26. Ms. Minnick claims the doctor's opinions are not "meaningfully inconsistent" with her records. This is nothing more than a conclusory statements that the ALJ's reasoning is invalid, and thus fails to establish the ALJ harmfully erred. The Court has reviewed the record and concludes it was not unreasonable for the ALJ to find Dr. Peterson's opinion is at odds with Ms. Minnick's treatment history.

The ALJ also found Ms. Minnick's ability to travel alone to another state and her ability to care for an ailing father are inconsistent with the doctor's opinion. Ms. Minnick again fails to explain in her opening brief why this is an unreasonable interpretation of the record and instead

repeats her claim that the doctor's opinion is not "meaningfully inconsistent" with her activities. It is not unreasonable for the ALJ to conclude that being able to travel alone interstate and care for an ailing person is inconsistent with a person who is markedly limited in her ability to be aware of hazards and to take precautions. In any event, Ms. Minnick fails to provide any explanation as to why the ALJ's rationale is unsupported by evidence and has thus failed to meet her burden of establishing the ALJ committed harmful error. The Court accordingly affirms the ALJ's assessment of Dr. Person's opinions.

### 3. Drs. Clifford and Robinson

Ms. Minnick contends the ALJ erred in giving great weight to the opinions of Drs. Clifford and Robinson because "they did not review any evidence after May 2012." Tr. 6. Ms. Minnick fails to explain how or why this matters. Her opening brief points to no evidence developed after May 2012 that undermines the opinions of the two doctors, and thus fails to show the ALJ harmfully erred. Her argument is also inconsistent with her claim that the doctor erred in rejecting the opinions of Ms. Durham and Ms. Hale, who also rendered opinions without reviewing evidence after May 2012.

### 4. Dr. Kakar, Ms. Bahr, and Dr. Wilkinson

The ALJ rejected these sources' opinions that Ms. Minnick is markedly impaired in nearly all areas of social and cognitive functioning. Tr. 27-28. The ALJ found these opinions were inconsistent with Ms. Minnick's two year treatment history which showed Ms. Minnick's mental status was unremarkable; that she was pleasant and cooperative when seen; had normal affect; showed logical thought process and appropriate thought content; that she had full orientation; possessed intact cognitive functioning, normal insight and judgment; and exhibited no suicidal ideation. Tr. 27. Ms. Minnick argues although the ALJ found Dr. Wilkinson's

opinions were inconsistent with her appearance at her treatment providers and her activities of daily living, "it was fully proper for Dr. Wilkinson to base his opinion on his mental status exam." 13 at 9. This argument evades the ALJ's reasoning—that an ALJ may discount a doctor's opinion when it is inconsistent with other medical evidence or activities of daily living. The Court cannot say that it was unreasonable for the ALJ to find the sources opinions are inconsistent with Ms. Minnick's treatment history and according affirms the ALJ's rationale.

The ALJ gave other reasons to reject the opinions. However, even if some of the other reasons are invalid, because the ALJ gave one valid reason supported by substantial evidence, any error the ALJ might have made is harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

### 5. *Hand doctors*

Ms. Minnick lists findings about her hands made by Dr. Shors, Jeffrey Carlin, M.D., and Paul Boone, M.D. Dkt. 13 at 9-10. She argues these findings show she "had minimal functional use in her right hand." *Id.* at 10. The argument fails. Ms. Minnick relies upon medical records between October 2012 and July 2013. But she disregards the ALJ's findings that after her June 2013 surgery, Dr. Shors stated Ms. Minnick has "no restrictions with activity level," Tr. 885, and that after July 2013, "the record contains no evidence of any further treatment for upper extremity problems. Tr. 21. Ms. Minnick does not challenge these findings and the Court accordingly concludes that the ALJ's assessment of the medical evidence regarding Ms. Minnick's hands is reasonable and supported by the record.

### 6. **New Evidence Presented to the Appeals Council**

Ms. Minnick submitted to the Appeals Council a June 22, 2015, letter from Stephen Baltz, ARNP, which states "I strongly suggest she be considered for disability because she is

likely not employable at this time," and a psychological evaluation dated September 2, 2015, indicating Ms. Minnick is markedly limited in her ability to be aware of normal hazards, and maintain appropriate behavior in a work setting. *See* Appendix to opening brief. Ms. Minnick argues "despite the fact that this evidence arguable relates back to the date of the ALJ's decision, the Appeals Council failed to include this evidence in Minnick's court transcript." Dkt. 13 at 10. The Appeals Council received and considered the letter and evaluation, and they are therefore part of the record that the Court reviews. Tr. 2. But they do not, as Ms. Minnick claims, compel remand. Mr. Baltz's letter states a legal conclusion: Ms. Minnick is disabled. It provides no facts the Court can rely upon to reverse the ALJ's determination. The psychological evaluation was prepared by Sylvia Thorpe, Ph.D. Dr. Thorpe did not indicate she reviewed Ms. Minnick's past records, and did not indicate Ms. Minnick limiting symptom started before or at the time the ALJ assessed her condition. If anything, Dr. Thorpe's GAF score of 35 indicates Ms. Minnick became less functional after the ALJ assessed her. For instance in November 2014, Dr. Wilkinson assessed a GAF of 49. Tr. 971. Hence the Court cannot rely upon Dr. Thorpe's evaluation to find the ALJ's determination is not supported by substantial evidence.

**B.     Ms. Minnick's Testimony**

Ms. Minnick argues the ALJ erred in rejecting her testimony. She first argues when the ALJ errs in evaluating the medical evidence, the error "taints" the evaluation of a claimant's testimony. Dkt. 13 at 11. The Court rejects the notion that misevaluation of the medical evidence necessarily leads to misevaluation of a claimant's testimony.

Second, Ms. Minnick argues the ALJ erred in rejecting her testimony about her hand limitations solely based upon a lack of objective evidence. *Id.* This mischaracterizes the ALJ's findings. The ALJ found that post-surgery Ms. Minnick's doctor stated she has "no restrictions

with activity level," Tr. 885, and that after July 2013, "the record contains no evidence of any further treatment for upper extremity problems. Tr. 21. These findings simply state the obvious: that Ms. Minnick's statements about the severity of her hand limitations are inconsistent with the medical record.

The Court notes and rejects Ms. Minnick's argument that the ALJ erred by failing to ask why she did not get treatment, especially since she was incarcerated at the time of her hearing. Dkt. 13 at 12. The argument implies that if asked Ms. Minnick would have provided a reasonable explanation for why she did not receive treatment. The Court declines to rely upon implications to find error. Ms. Minnick's lawyer sought review in the Appeals Council and never indicated that there was a reasonable explanation for the lack of treatment. The record in any event shows Ms. Minnick continued to receive treatment for other health problems, even though she did not for her hands. Thus, this not a case in which the facts of the claimant's treatment and situation required the ALJ to inquire into the reasons the claimant did not receive or seek certain treatment.

The ALJ also rejected Ms. Minnick's testimony based upon inconsistent or "dishonest" statements she made to treatment providers about her drug and alcohol use. Tr. 23. Ms. Minnick claims this is an invalid reason because she is currently sober. Dkt. 13 at 13. But this evasive answer does not alter the fact the ALJ may reject a claimant's testimony based upon inconsistencies between her testimony and conduct. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). In short, because the above reasons are valid and supported by substantial evidence, the Court affirms the ALJ's determination.

//

//

ORDER REVERSING THE COMMISSONER AND REMANDING FOR
FURTHER PROCEEDINGS - 8

C.  **Lay Testimony**

Ms. Minnick argues the ALJ's failure to discuss Kelly Bigelow's 2008 comments about Ms. Minnick is "legal error." Dkt. 13 at 17. The ALJ is required to consider all relevant evidence. Assuming the ALJ erred, Ms. Minnick's argument fails because her opening brief does not explain how the error is harmful. Ms. Minnick next argues the ALJ erred in rejecting her parents' and Gregory Darnell's statements about how Ms. Minnick has been beaten, has nightmares, has trouble functioning due to lack of sleep, and has pain in her extremities. *Id.* These lay witnesses describe the same limitations described by Ms. Minnick. The ALJ rejected Ms. Minnick's testimony as inconsistent with the medical evidence, a reason which would also apply to the lay witnesses who describe the same symptoms as Ms. Minnick. The Court accordingly must affirm the ALJ's determination. *See Molina v. Astrue*, 674 F.3d 1104 (9th Cir. 2012).

**CONCLUSION**

The Court **REVERSES** the Commissioner's final decision and **REMANDS** the case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall reassess Ms. Durham and Ms. Hales Opinions, develop the record as needed, reassess Ms. Minninck's RFC and proceed to steps four and five and appropriate.

DATED this 21st day of September, 2017.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge